## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GAREY THOMAS,** | : | |
| | : | **CIVIL ACTION** |
| v. | : | No. 23-0907 |
| | : | |
| **SAEED BAZEL, M.D. &** | : | |
| **NURSE VOLTZ** | : | |

**McHUGH, J.**                                                                                                                            **May 30, 2024**

### MEMORANDUM

This is a civil rights action brought pro se by a state prisoner, Garey Thomas, who asserts Eighth Amendment claims stemming from complications after surgical placement and delayed removal of a urinary catheter. I previously denied Defendants' Motion to Dismiss as to the claims against Nurse Voltz and a defendant identified only as "Dr. Doe." ECF 21. I then ordered the Pennsylvania Department of Corrections to provide Mr. Thomas with his medical records, ECF 22, after which he filed an amended complaint naming Dr. Saeed Bazel in place of Doe. ECF 23.

Dr. Bazel now moves to dismiss, arguing that because he was not specifically identified in the grievances filed by Mr. Thomas concerning the medical care that is the subject of this case, Thomas has failed to exhaust his claims. I reject that argument because Mr. Thomas's grievances provided sufficient notice to prison officials about the nature of his complaint.

I.     **Relevant Background**

The factual allegations in this case are set forth in detail in my memorandum issued May 1, 2023. ECF 8. The essence of the claim is that after Mr. Thomas returned to the prison following surgery which included the insertion of a catheter, medical staff ignored the hospital discharge

instructions specifying a time for removal of the catheter, and ignored his request for medical attention, causing a serious infection.

## II. Standard of Review

Within the Third Circuit, motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). As Mr. Thomas is proceeding *pro se*, I construe his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III. Discussion

Preliminarily, Dr. Bazel argues that Mr. Thomas fails to state a cause of action against him based on deliberate indifference to a serious medical need. In my earlier memorandum analyzing the claim against "Dr. Doe" I concluded that Mr. Thomas's allegations raise a plausible Eighth Amendment claim. That conclusion remains the same now that Dr. Doe has been identified.[1]

Dr. Bazel further argues that Mr. Thomas did not properly exhaust his administrative remedies against him because Dr. Bazel was not directly named in the grievance process.[2] The Prison Litigation Reform Act (PLRA) requires individuals to exhaust prison grievance procedures before suing in federal court. 42 U.S.C. § 1997e. Exhaustion hinges on compliance with the

---

[1] Dr. Bazel also argues that he could not have been deliberately indifferent to Mr. Thomas's serious medical needs because he "never saw, treated or consulted on any care rendered to Thomas." Bazel Mot. Dismiss 6, ECF 33. At this stage of the proceedings, I must accept Mr. Thomas's well-pleaded facts as true. *Fowler*, 578 F.3d at 210. Dr. Bazel also makes reference in his pleadings to his intent to file an affidavit of non-involvement, Bazel Mot. Dismiss ¶ 21, but that is a procedure governing medical malpractice claims under state law. *See* 40 P.S. § 1303.506.

[2] A district court judge may consider indisputably authentic documents related to Thomas's grievances, such as the Pennsylvania Grievance Policy and the grievances at issue. *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004) ("Given that the exhaustion issue turns on the indisputably authentic documents related to [Petitioner's] grievances, we hold that we may also consider these without converting it to a motion for summary judgment.").

specific prison's grievance policies, and a grievance "is not *per se* inadequate simply because an individual later sued was not named in [it]." *Jones v. Bock*, 549 U.S. 199, 218-19 (2007). That is so because "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* Consequently, the question here is what suffices to comply with the Pennsylvania Department of Corrections' grievance process when a prisoner is able to set forth the essential facts of an incident and describe the individual involved, except not by name?

The relevant provision of the Pennsylvania Inmate Grievance System policy states that "[t]he inmate shall identify individuals directly involved in the event(s)." DC-ADM 804, Sect. 1.A.11.b.[3] On its face, the policy does not specify a requirement to identify "by name," though the Third Circuit has construed the policy as requiring such identification. *Spruill v. Gillis*, 372 F.3d 218, 234 (3d Cir. 2004). But it has tempered enforcement of that requirement depending on the facts of the case. For example, in *Williams v. Beard* the Circuit excused a procedural violation where the plaintiff did not name the individual in question because the prison was put on notice of the essence of the complaint. 482 F.3d 637, 639-40 (3d Cir. 2007). It held that "the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." *Id.* at 640 (citing *Jones*, 549 U.S. at 219). And in *Spruill* itself, the Circuit construed the requirement as one "to identify [the individual involved] *if practicable*," and ultimately excused the technical default because the grievance as filed allowed

---

[3] This exact language was added to the grievance policy in 2010, although the earlier language was substantially similar, stating that "[t]he inmate will identify any person(s) who may have information that could be helpful in resolving the grievance." *See Byrd v. Shannon*, 715 F.3d 117, 127 n.5 (3d Cir. 2013) (noting the change in the grievance policy language); *Spruill v. Gillis*, 372 F.3d 218, 234 (3d Cir. 2004) (citing the pre-2010 grievance policy); *Williams v. Beard*, 482 F.3d 637, 638 n.2 (3d Cir. 2007) (same).

the prison to identify the medical provider involved. 372 F.3d at 234 (emphasis added). In a later case, *Byrd v. Shannon*, the Third Circuit held that a petitioner failed to satisfy the exhaustion requirements when he did not name a nurse involved in an incident because there was "no indication that prison administrators were aware that [the nurse] was allegedly involved with the events surrounding the grievance before [the plaintiff] filed suit." 715 F.3d 117, 127 (3d Cir. 2013).

Here, Mr. Thomas filed a series of grievances, in which he charged the "medical department" with failing to remove the catheter and respond to his complaints. *See* Bazel Ex., ECF 33-2 at 24-25. Mr. Thomas provided enough detail so that the grievance coordinator in the Initial Review Response was able to recount specific details about his medical treatment and alleged mistreatment. *See* ECF 33-2 at 22-23. In that respect, the case here is like *Spruill*, where an inmate complaining of medical care failed to name a physician's assistant by name, but the prison's response revealed that it knew the identity of those who had participated in the inmate's care. And although it is possible that Dr. Bazel himself may not have been on notice of the specific grievance, the PLRA does not require personal notice. *Williams*, 482 F.3d at 640.

As such, I find that Mr. Thomas's claims against Dr. Bazel were administratively exhausted because although he was unable to name Dr. Bazel, he provided sufficient detail such that the Pennsylvania Department of Corrections was on notice of a problem and able to identify for themselves all relevant parties.[4] To find the opposite, that Mr. Thomas would have had to

---

[4] Realistically speaking, the Pennsylvania DOC grievance requirement that Mr. Thomas "identify individuals directly involved" was also 'unavailable' to him because, lacking any memory of the name of the doctor, the information necessary to identify him was not readily accessible. *See Brown v. Croak*, 312 F.3d 109, 11 (3d Cir. 2002) (discussing that the PLRA only "requires exhaustion of such administrative remedies 'as are available.'"); *see also Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019) (discussing that an administrative remedy will be treated as exhausted when it is unavailable, such as when it "becomes, practically speaking, incapable of use"). Mr. Thomas was able to complete the grievance process in full, except for naming the specific doctor involved. Although there is no evidence that prison officials

remember the exact name of the treating physician to file this lawsuit, which would impose an unrealistic burden that is unnecessary to accomplish the goals of the grievance process.

### IV. Conclusion

For the reasons set forth above, Defendant Dr. Saeed Bazel's Motion to Dismiss is denied and Plaintiff's claims against Dr. Bazel may proceed. An accompanying order follows.

 /s/ Gerald Austin McHugh
United States District Judge

---

obstructed him, he did not have access to his medical records until the Court issued an order requiring access.