IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GAREY THOMAS** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **No. 23-907** |
| | : | |
| **JAMIE SORBER,** *et al.* | : | |

**McHUGH, J.**                                                                                                   **March 17, 2026**

## MEMORANDUM

Plaintiff Garey Thomas, a prisoner in state custody proceeding *pro se*, asserts Eighth Amendment claims stemming from complications after surgical placement and delayed removal of a urinary catheter.  Regrettably for Mr. Thomas, the physician he sued, Dr. Saeed Bazel, was employed by Wellpath, a private entity providing health care in correctional institutions—which has since faltered and declared bankruptcy.  Dr. Saeed now moves to dismiss for a second time, on the ground that his liability was discharged under Wellpath's Chapter 11 reorganization plan. That plan was confirmed by the United States Bankruptcy Court for the Southern District of Texas in May 2025, and Dr. Bazel contends that Mr. Thomas failed timely to opt out of the Plan's third-party release, thereby discharging Dr. Bazel of liability.  Because I conclude that Mr. Thomas had adequate notice of the bankruptcy and failed to opt out, the complaint as to Dr. Bazel must be dismissed.

## I.      Relevant Background

The factual allegations in this case are set forth in detail in a previous memorandum. *Thomas v. Sorber*, No. 23-0907, 2023 WL 3182931, at *1 (E.D. Pa. May 1, 2023).  The essence of the claim is that after Mr. Thomas returned to SCI-Phoenix following a surgery which included the insertion of a catheter, prison medical staff ignored the hospital discharge instructions

specifying a time for removal of the catheter, and ignored his request for medical attention, causing a serious infection.  Some of the medical staff were employed by Wellpath, a private company that contracted with SCI-Phoenix to provide medical care for those incarcerated at the facility.

The history of this action provides relevant context.  Mr. Thomas's original complaint, ECF 2, included claims against the prison's medical department, the prison superintendent in his personal and official capacity, Wellpath, and Wellpath employees in both their personal and official capacities.  These Wellpath employees originally included Dr. "John Doe."  ECF 2 at 2.  I dismissed with prejudice Mr. Thomas's claims against the medical department as well as those claims against the superintendent and Wellpath employees in their official capacities.  *Thomas*, 2023 WL 3182931, at \*3.  I dismissed without prejudice the remaining claims against Wellpath, as well as the superintendent and Wellpath employees in their individual capacities and provided Mr. Thomas leave to amend.  *Id.*

Following Mr. Thomas's Amended Complaint, ECF 12, the superintendent and Wellpath employees moved to dismiss, ECF 18.  I denied the Motion as to the Wellpath employees but directed Mr. Thomas to name Dr. John Doe.  ECF 22.  I granted the Motion as to the superintendent and dismissed those claims without prejudice.  *Id.*  Soon thereafter, Mr. Thomas identified Dr. Saeed Bazel as John Doe.  ECF 23.  Dr. Bazel moved to dismiss the complaint for failure to state a claim, ECF 33, but that motion was denied, ECF 38.  Mr. Thomas sought the appointment of counsel, ECF 34, and the case was listed with this Court's pro bono panel, ECF 46, where it remained for more than a year, without a successful placement.  ECF 69.

On November 20, 2024, Dr. Bazel filed a suggestion of bankruptcy and notice of stay, requesting this Court to stay this action based upon a bankruptcy proceeding pending in the United States Bankruptcy Court for the Southern District of Texas involving Wellpath. ECF 48.  I ordered

Dr. Bazel to show cause as to why this case should be stayed, ECF 49, and once he did so I entered an order staying this action, ECF 60.

On March 18, 2025, the bankruptcy court entered an order, which, among other things, required the debtors to serve their proposed Chapter 11 reorganization plan and related notices on potential claimants and scheduled the hearing at which the court would consider confirming the plan for April 30, 2025. *In re Wellpath Holdings, Inc.* (*Wellpath*), No. 24-90533 (Bankr. S.D. Tx.), ECF No. 1867. Over the ensuing weeks, the debtors filed affidavits confirming service through mail and publication in the April 2025 edition of *Prison Legal News*, among other national publications. *Wellpath*, ECF Nos. 1993, 2037, 2121, 2315, 2258. On May 1, 2025, the day after the confirmation hearing, the bankruptcy court confirmed the debtors' Chapter 11 reorganization plan ("Confirmation Order"), which took effect on May 9, 2025. *Wellpath*, ECF No. 2596. The Confirmation Order set July 31, 2025, as the extended deadline for incarcerated claimants to opt out of the plan's third-party release. *Id.* at 1, 82. It appears many such individuals opted out. *Wellpath*, ECF No. 2528 at 68; *see, e.g.*, *Wellpath*, ECF Nos. 2726–2728.

I lifted the stay on May 29, 2025, following the Confirmation of the Plan of Reorganization under Chapter 11 of the Bankruptcy Code filed by Wellpath in the United States Bankruptcy Court for the Southern District of Texas, Houston Division, *see Wellpath*, ECF No. 2596. ECF 62. In that same Order I directed Mr. Thomas to complete and return a supplied form.

The form requested (a) indication as to whether he had submitted, prior to April 7, 2025, a Proof of Claim to the Bankruptcy Court or to Wellpath's Claims Agent; or (b) whether Mr. Thomas submitted, prior to July 30, 2025, any of the following to Wellpath, its Claims Agent, or the Bankruptcy Court: (i) an objection to or motion for relief from the Automatic Stay, (ii) an objection to confirmation of Wellpath's Chapter 11 plan, and/or (iii) a ballot or other communication

affirmatively expressing an intent to opt out of the Third-Party Release. *Id.* at 2. Importantly, I noted that "[a]bsent any information that Mr. Thomas has opted out of the Third-Party Releases or otherwise taken action in the Bankruptcy Court, the claims against the remaining Wellpath employees **may be barred** by the injunction contained in the confirmed Chapter 11 Plan." *Id.* at 2 n.2. In essence, Mr. Thomas was at that point made aware of a deadline approaching approximately two months later.

Mr. Thomas returned the form, answering both (a) and (b) in the negative. ECF 63. Following the opt-out deadline and without any evidence that Mr. Thomas timely opted out, Dr. Bazel moved to dismiss the claims against him in this action on August 18, 2025. Mot. to Dismiss, ECF 66. On October 2, I ordered Mr. Thomas to file a response to the Motion no later than 30 days from receipt of the Order. ECF 70. Mr. Thomas filed a notice alerting the Court that he had never received Dr. Bazel's Motion and therefore could not properly respond.[1] ECF 72. This Chambers then mailed the Motion to Mr. Thomas on December 9. Nearly three months later, Mr. Thomas has not responded to the Motion as of the date of this memorandum.

## II.     Standard of Review

The question is whether the Confirmation Order enjoins Mr. Thomas from pursuing his claims against Dr. Bazel. The answer depends on the adequacy of notice that Plaintiff received about the debtors' Chapter 11 reorganization plan in the bankruptcy proceeding, which presents a mixed question of law and fact, because it requires applying established legal standards to this case's unique facts. *See U.S. Bank Nat. Ass'n v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 394 (2018)

---

[1] Dr. Bazel contradicts Mr. Thomas's assertion that he did not receive the Motion as "false and untrue." ECF 74 at 1. I do not opine on the veracity of Mr. Thomas's claim.

(defining a mixed question of law and fact as one that asks "whether the historical facts found satisfy the legal test chosen"); *see also Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 228 (2020) ("[W]e have often used the phrase 'mixed questions' in determining the proper standard for appellate review of a . . . bankruptcy . . . decision that applies a legal standard to underlying facts.").

Whether a reviewing court applies a clear error or a de novo standard when assessing a bankruptcy judge's adequacy-of-notice determination appears to be an open question in this Circuit. *See In re Congoleum Corp.*, 149 F.4th 318, 331 (3d Cir. 2025) (noting that the Third Circuit has "sometimes reviewed the adequacy of notice in bankruptcy proceedings for clear error" but declining to decide whether clear error or de novo review applied in the case before it); *see, e.g.*, *Chemetron Corp. v. Jones*, 72 F.3d 341, 347 (3d Cir. 1995) (applying clear error standard). Other circuit courts have diverged on this issue, employing both clear error and de novo review in bankruptcy and other contexts. *See, e.g.*, *In re Smith*, 582 F.3d 767, 778–79 (7th Cir. 2009) (discussing standard of review regarding adequacy of notice of bankruptcy petition and collecting cases); *In re Brawders*, 503 F.3d 856, 866 (9th Cir. 2007) ("Whether adequate notice has been given for purposes of due process in a particular instance is a mixed question of law and fact that we review de novo."). Like the Third Circuit in *Congoleum*, 149 F.4th at 331, I do not decide which standard of review applies here because I would agree with the bankruptcy court under either standard.

## III.    Discussion

### A. The adequacy of notice in bankruptcy matters must comport with due process.

When a litigant is barred from having his "day in court" because of the resolution of a bankruptcy, the overarching concern is one of due process. This is because notice is "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded

5

finality." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Indeed, the Bankruptcy Code integrates this core principle of our legal system into its provisions. *See* 11 U.S.C. § 342(a) ("There shall be given such notice as is appropriate . . . of an order for relief . . . under [the Bankruptcy Code].").

Under bankruptcy law, the confirmation of a debtor's reorganization plan "discharges the debtor from any debt that arose before the date of such confirmation." *Jones v. Chemetron Corp.* (*Chemetron II*), 212 F.3d 199, 209 (3d Cir. 2000) (quoting 11 U.S.C. § 1141(d)(1)(A)). Generally, "confirmation of the debtor's reorganization plan discharges all prior claims against the debtor." *Chemetron Corp. v. Jones* (*Chemetron I*), 72 F.3d 341, 346 (3d Cir. 1995); *see* 11 U.S.C. § 524(a)(2) ("A discharge in a case under this title . . . operates as an injunction against the commencement or continuation of an action . . . to collect, recover or offset any such debt as a personal liability of the debtor."). However, due process dictates that without proper notice of the bankruptcy proceeding, a claimant "will not have a meaningful opportunity to protect his or her claim," *In re Grossman's Inc.*, 607 F.3d 114, 126 (3d Cir. 2010), and therefore, insufficient notice "precludes discharge of a claim in bankruptcy," *Chemetron I*, 72 F.3d at 346. *See also Chemetron II*, 212 F.3d at 209.

It is well-established that due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Congoleum*, 149 F.4th at 332 (quoting *Folger Adam Sec., Inc. v. DeMatteis/MacGregor J.V.*, 209 F.3d 252, 265 (3d Cir. 2000)). For notice purposes in the bankruptcy context, claimants (*i.e.*, creditors) fall into two categories: "known" and "unknown." *Chemetron I*, 72 F.3d at 346. "[A] 'known' creditor is one whose identity is either known or 'reasonably ascertainable by the debtor.'" *Id.* (quoting *Tulsa Pro. Collection Servs., Inc. v. Pope*,

485 U.S. 478, 490 (1988)).  "A creditor's identity is 'reasonably ascertainable' if that creditor can be identified through 'reasonably diligent efforts.'"  *Id.* (quoting *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 n.4 (1983)).  "Known creditors must be provided with actual written notice of a debtor's bankruptcy filing and bar claims date."  *Id.* (citing *City of New York v. N.Y., N.H. & H.R. Co.*, 344 U.S. 293, 296 (1953)).  If claimants are "unknown" creditors, however, notice by publication is "sufficient to satisfy the requirements of due process and their claims are barred, absent some other basis for relief."  *Id.* at 345–46.  The adequacy of notice provided is a case-specific question.  *See Wright v. Owens Corning*, 679 F.3d 101, 108 (3d Cir. 2012).

### B.  The Confirmation Order bars Mr. Thomas's claims against Dr. Bazel.

After careful review of the Confirmation Order, the docket in the bankruptcy proceeding, the debtors' Chapter 11 reorganization plan, and Mr. Thomas's notice of the bankruptcy proceeding, I conclude that he is permanently enjoined from pursuing his claims against Dr. Bazel in this action.

*1.  The debtors' reorganization plan applies to Mr. Thomas and Dr. Bazel.*

A select number of the plan's provisions are relevant to deciding this motion.  To begin, Article IX.A provides, in relevant part, that once the plan takes effect, all claims against the debtors will be discharged:

> [T]he distributions, rights, and treatment that are provided in the Plan shall be in *complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever*, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in the Debtors or any of their assets or properties . . . including demands, liabilities, and Causes of Action that arose before the Effective Date.

Ch. 11 Plan, *Wellpath*, ECF No. 2596 at 128 (emphasis added).

Article IX.D contains the third-party release at issue, which provides, in relevant part, that the "Releasing Parties," as defined in the plan, "shall be deemed to have . . . forever, released and discharged each Released Party from any and all claims . . . causes of action . . . [and] actions . . . of any kind or character whatsoever . . . asserted or assertable on behalf of any of the Releasing Parties . . . based on or relating to, or in any manner arising from, in whole or in part, the Debtors." *Id.* at 132 ("Third-Party Release").  Relevant here, the plan defines "Releasing Parties" as

> *each Holder of a Claim that is or was an incarcerated individual that does not affirmatively elect to opt out of being a Releasing Party* by delivering such election (by checking the appropriate box on such incarcerated individual's Ballot, or by another means of written communication, to indicate that such incarcerated individual elects to opt out of the Plan's release provisions) to the Debtors, the Claims and Solicitation Agent, or the Bankruptcy Court *by no later than 90 days after the Confirmation Date.*

*Id.* at 82 (emphasis added).  The Confirmation Date was the date on which the bankruptcy court entered the Confirmation Order on the docket, *id.* at 67, which was May 1, 2025, *id.* at 1. Therefore, the deadline for incarcerated claimants, including Plaintiff, to opt out of the Third-Party Release was July 31, 2025.

As I noted in a prior order, *see* ECF 62 at 2 n.2, the plan includes an injunction clause, which provides that any claimant who fails to "timely opt out of the Third-Party Release" will be "permanently enjoined, from and after the Effective Date . . . commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests" against the Released Parties, Ch. 11 Plan, *Wellpath*, ECF No. 2596 at 134.  The plan includes "each Debtor . . . [and] the Related Parties" in its definition of "Released Parties," *id.* at 81, and further defines "Related Party," in relevant part, as "with respect to any Entity, such Entity's . . . employees . . . acting in such capacity whether current or former," *id.*

Taking these provisions together, it follows that Plaintiff, an incarcerated individual with potential claims against the debtors and their employee, is therefore a "releasing party" under the plan, who needed to timely opt out of the Third-Party Release to avoid becoming bound by its terms and the corresponding injunction. Moreover, Dr. Bazel is a "related party" under the plan because he was the debtors' employee during the relevant period.

Against that backdrop, I turn now to address whether Mr. Thomas received adequate notice.

### 2. Mr. Thomas received adequate notice.

It is likely the case that Mr. Thomas is an unknown creditor for notice purposes because Wellpath, a debtor, was dismissed from this case in 2023 (*i.e.*, prior to the bankruptcy proceedings) and his remaining claims were against third party non-debtors. *See Wellpath*, ECF No. 91 at 1 n.1 (linking to a "complete list of Debtors," a list that does not include Dr. Bazel). If Mr. Thomas is treated an unknown creditor, notice by publication is "sufficient to satisfy the requirements of due process and their claims are barred, absent some other basis for relief." *Chemetron I*, 72 F.3d at 345–46.

But even if he is categorized as a known creditor, his Court's May 29, 2025, Order suffices for adequate notice, when viewed in totality alongside the bankruptcy proceeding updates filed in this case as well as the debtor's publishing of bankruptcy notice in widely circulated newspapers.

Beginning with Dr. Bazel's Suggestion of Bankruptcy on November 20, 2024, this case contains no fewer than ten filings concerning the bankruptcy proceedings, both in orders by this Court and filings by Dr. Bazel. *See* ECF 48, 49, 51, 52, 58, 59, 60, 61, 62. Mr. Thomas was sufficiently aware of the proceedings that he argued in a supplemental filing that Dr. Bazel should not be considered a non-debtor for purposes of the Wellpath bankruptcy stay. ECF 57 at 2. My

May 29 Order and accompanying declaration made it clear that Mr. Thomas's remaining claims against Wellpath employees risked being barred absent information that he opted out prior to the July 31 deadline.  ECF 62.  Mr. Thomas returned the declaration, dated June 6, indicating that he had not opted out.  ECF 63.  At that time, he had seven additional weeks to file an intent to opt out; he has since filed no indication that he opted out.

Additionally, the debtors filed affidavits confirming publication of notice of the bankruptcy, proofs of claim deadlines, and the plan itself in widely circulated print media including *Prison Legal News*, *New York Times*, and *USA Today* among other national publications.  *See, e.g.*, *Wellpath*, ECF Nos. 297, 1049, 1050, 1727, 2013, 2014, 2258.

When viewed in totality, the Order, case filings, and publications indicate that Mr. Thomas received adequate notice of the bankruptcy plan and his need to opt out in order to proceed with his claims against Dr. Bazel.

### 3.  The Confirmation Order enjoins Mr. Thomas's claims against Dr. Bazel.

Plaintiff has neither challenged the bankruptcy court's notice determination in that proceeding nor presented any evidence to this Court that he timely opted out of the plan's Third-Party Release, despite having been given notice of the bankruptcy proceeding prior to the opt-out deadline.  Although courts accord imprisoned *pro se* litigants a measurable degree of latitude, "[a]t the end of the day, they cannot flout procedural rules—they must abide by the same rules that apply to all other litigants."  *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

Despite the Court ordering Mr. Thomas to respond to Dr. Bazel's Motion, ECF 70, he has failed to do so.  As the Third Circuit has observed, "there are limits to [courts'] procedural flexibility," *Mala*, 704 F.3d at 245, and even as an incarcerated *pro se* litigant, Mr. Thomas is

nonetheless "responsible for his failure to . . . comply with [the] [C]ourt's orders," *Briscoe v. Klaus*, 538 F.3d 252, 258 (3d Cir. 2008).

Because Mr. Thomas has not provided any evidence that he timely opted out of the Third-Party Release, I must conclude that Dr. Bazel has been released and discharged from any claims arising out of the events pleaded in the Complaint and permanently enjoined from pursuing these claims.

## IV.     Conclusion

For the reasons set forth above, Defendant Dr. Saeed Bazel's Motion to Dismiss, ECF 66, will be granted.  An appropriate order follows.

  /s/ Gerald Austin McHugh
United States District Judge

11