**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GAREY THOMAS,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **No. 23-0907**[1] |
| | : | |
| **VOLTZ, et al.** | : | |
| | : | |

**McHUGH, J.** **November 10, 2026**

**MEMORANDUM**

This is a civil rights action brought *pro se* by a state prisoner, Garey Thomas, who brings an Eighth Amendment claim stemming from complications after delayed removal of a surgically placed urinary catheter in violation of a hospital discharge order. Mr. Thomas' path to success in this case faces a major obstruction—the bankruptcy of Wellpath—the entity contracted to provide medical care at the state institution where he was confined. That bankruptcy also discharged the attending physician supervising his care.[2] This leaves only one remaining defendant, Nurse Voltz, and the record does not contain evidence from which a reasonable jury could find that she was the health care professional responsible for failing to remove the catheter

[1] Resolution of this case was delayed by the bankruptcy Defendant Wellpath.

[2] I previously denied Defendants' initial Motion to Dismiss as to the claims against Nurse Voltz and a defendant identified only as "Dr. Doe." ECF 21. I then ordered the Pennsylvania Department of Corrections to provide Mr. Thomas with his medical records, ECF 22, after which he filed an amended complaint naming Dr. Saeed Bazel in place of Doe. ECF 23. Dr. Bazel was employed by Wellpath, a private entity providing health care in correctional institutions. Dr. Bazel moved to dismiss the complaint for failure to state a claim, ECF 33, but that motion was denied, ECF 38. Mr. Thomas sought the appointment of counsel, ECF 34, and the case was listed with this Court's pro bono panel, ECF 46, where it remained for more than a year, without successful placement. ECF 69. Dr. Bazel then moved to dismiss a second time, due to Wellpath's Chapter 11 bankruptcy reorganization plan. I ordered him to supplement the record to establish whether Mr. Thomas had recourse under the plan. ECF 75. Finding that he did, ECF 76, I ultimately granted the renewed motion to dismiss, *see* ECF 77, 78.

on a timely basis. I am therefore constrained to grant the pending motion for summary judgment.

## I. Factual Record

On January 8, 2021, Mr. Thomas was transported to the hospital, presenting with severe bladder pain, at which time a catheter was inserted. Dep. tr. at 29. Two months later, on March 8, 2021, he returned to the hospital for further evaluation. *Id.* at 33. On March 23, 2021, Mr. Thomas was admitted to the hospital again due to ongoing pain, where he underwent surgery and had a foley catheter re-inserted. Medical records from Einstein Medical Center Montgomery describe that Mr. Thomas was to "maintain [the] foley catheter for 5 to 7 days until void trial either back in prison or in the office." Ex. 3. It was not removed until May 4, 2021, well beyond the interval specified by the hospital. Mr. Thomas contends that this failure to comply with the hospital's instructions represents deliberate indifference to his medical needs. Consequently, the relevant factual inquiry is what involvement Nurse Voltz had in caring for Mr. Thomas after his return to prison until the catheter was removed.

Mr. Thomas was discharged from the hospital on March 25, 2021, and was subsequently placed in the prison infirmary for "a couple of days." Dep. tr. at 38-39. Mr. Thomas testified that he did not speak to Nurse Voltz at the infirmary, *Id.* at 40, 47, and the medical records do not reflect her participation in his care during that interval.[3] The following day, on March 26, 2021, Mr. Thomas was discharged from the infirmary and moved to the M-Block, a quarantine unit. *Id.* at 53. Mr. Thomas testified that during his time on M-Block before his return to the general population, he likewise had no contact with Nurse Voltz. *Id.* at 60. During this time, Wellpath provided medical services to the prison and Dr. Bazel was the attending physician.

[3] The record reflects that Nurse Voltz had changed his catheter earlier in March of 2021 before the events giving rise to this action, Dep. Tr. at 92-93, and she did so in response to his complaints of pain. *Id.* at 94.

On April 7, Mr. Thomas had an evaluation for a medical infection. *Id.* at 68. He testified that during his evaluation, Nurse Voltz was present in the room. He did not interact with her but overheard a conversation between Nurse Voltz and the attending physician regarding the medication prescribed for his infection. *Id.* Throughout the remainder of April, Mr. Thomas did not contact any medical personnel regarding a change of his catheter. *Id.* at 70. When specifically asked whether he had asked Nurse Voltz for help with his catheter, Mr. Thomas responded that he had not, *id.* at 95, and he could not recount any instance where Voltz denied him medical care ordered by a doctor. *Id.* at 96. In Mr. Thomas's view, however, because Nurse Voltz was provided with his records from the hospital when he returned to the institution, *id.* at 94-95, she must have been aware of the need to remove his catheter earlier. *Id.* at 104-107.

By the time the catheter was removed by Nurse Voltz on May 4, 2021, it was nearly a month past the date the hospital had specified for removal. Ex. 7.

## II. Standard of Review

"A party is entitled to summary judgment if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Young v. UPS*, 135 S. Ct. 1338, 1367 (2015) (quoting Fed. Rule Civ. Proc. 56(a)). As Mr. Thomas is proceeding *pro se*, I must construe his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). [4]

## III. Discussion

Prison officials violate the Eighth Amendment prohibition against cruel and unusual punishment when they act with deliberate indifference to a known and objectively serious risk to an incarcerated person's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Beers-*

[4] Mr. Thomas did not respond to this motion for summary judgment, but it must still be addressed on the merits. *Stackhouse v. Mazurkiewicz*, 951 F.2d 29 (3d Cir. 1992).

*Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001). In this context, deliberate indifference is a subjective standard: "the prison official-defendant must actually have known or been aware of the excessive risk" to an individual's safety and disregarded it. *Beers-Capitol*, 256 F.3d at 125; *see Farmer*, 511 U.S. at 842 (stating that "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm"); *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (describing deliberate indifference as a mindset requires "more than ordinary lack of due care for the [plaintiff's] interests or safety"); *Platt v. Brockenborough*, 476 F. Supp. 2d 467, 471 (E.D. Pa. 2007) (Brody, J.) (quoting *Farmer*, 511 U.S. at 835) (explaining that deliberate indifference requires something "more blameworthy than mere negligence"). In other words, "to act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009). The deliberate indifference requirement can be met when prescribed medical or mental health treatment is denied, delayed, or otherwise interfered with for non-medical reasons. *Pearson v. Prison Health Serv.*, 850 F.3d 526, 538 (3d Cir. 2017).

Here, the allegations do not support an Eighth Amendment claim against Nurse Voltz. The record fails to establish that she possessed actual knowledge that Mr. Thomas's catheter was overdue for removal and disregarded that specific medical need. She was one of several providers involved in Mr. Thomas' care and he had an attending physician. The record reflects only two brief interactions with him during the relevant time. She took possession of his hospital records upon his return to the prison and was present for a discussion of his medications for infection. There is no evidence that she was personally aware that his catheter was overdue for replacement. Even if one assumes that she reviewed and later failed to recall the discharge instructions, such a failure on her part would not rise above ordinary negligence, which is

insufficient to establish a constitutional deprivation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Daniels v. Williams,* 474 U.S. 327, 332–34, (1986) (holding that negligence is not compensable as a Constitutional deprivation).

The mere fact that Nurse Voltz ultimately removed the catheter on May 4, 2021, does not suffice to establish that she, as one of multiple providers working under Dr. Bazel, had personally ignored his needs previously. As noted above Mr. Thomas acknowledged that before his surgery she had in fact changed his catheter in response to his complaints of pain. Mr. Thomas also criticizes her technique in changing the catheter, but that claim was previously dismissed as not rising to the level of a constitutional deprivation. ECF 21 at 2.

**IV. Conclusion**

For the reasons set forth above, I am obligated to grant Defendant Nurse Voltz's Motion for Summary Judgment. An accompanying Order follows.

/s/ Gerald Austin McHugh
United States District Judge